**E-FILED on**   11/20/06

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COMERICA BANK,<br><br>        Plaintiff,<br><br>   v.<br><br>MICHAEL L. McDONALD and ALAN P. McDONALD,<br><br>        Defendants.<br>──────────────────────<br>MICHAEL L. McDONALD and ALAN P. McDONALD,<br><br>        Counter-claimants,<br><br>   v.<br><br>COMERICA BANK,<br><br>        Counter-defendant. | No. C-06-03735  RMW<br><br>ORDER GRANTING COMERICA'S MOTION TO DISMISS COUNTERCLAIM FOR FRAUD<br><br>**[Re: Docket No. 14]** |

Plaintiff Comerica Bank ("Comerica") moves to dismiss defendants Michael and Alan McDonald's ("the McDonalds") fraud counterclaim for failure to state a claim. The McDonalds oppose the motion. The court has read the moving and responding papers and considered the argument of counsel. For the reasons set forth below, the court grants Comerica's motion to dismiss

the McDonalds' fraud counterclaim.  The McDonalds have 20 days from the date of this order to amend their claim.

## I. BACKGROUND

The McDonalds partially own and operate Truckload, a start-up company providing construction supply services.  CC ¶¶ 6, 8; Mot. at 1.  Austin Ventures is a venture capital firm who invested $9.5 million in Truckload as the controlling shareholder in September 2003.  CC ¶ 7; Opp. at 1.  At the time, because Truckload allegedly had no cash, no credit capacity and no history of profitable operations, it could not qualify for traditional bank loans.  CC ¶ 8.  In October 2003, Comerica's Bank Technology and Life Science Division in Palo Alto, California provided a high-risk loan of $5 million to Truckload through Austin Ventures.  *Id*.  The McDonalds allege that Austin Ventures "almost exclusively" uses such division as a provider of high-risk financing.  *Id*.  As part of the "loan 'package,'" Comerica acquired shares and became an owner of Truckload.  *Id*.

As Truckload began to run very low on cash in the summer of 2004, Truckload and Austin Ventures negotiated various rounds of financing.[1]  CC ¶¶ 10, 12.  According to the counterclaim, Comerica "helped craft and approved [a] course of action" whereby the McDonalds would "target[] individual or 'retail' accredited investors similar to those who invested in Truckload from 2001 to 2003."  CC ¶ 12.  In this manner, Comerica allegedly "led [the McDonalds] to believe" that such retail accredited investors "would be acceptable."  *Id*.

In October 2004, the McDonalds each provided personal guaranties of up to $1 million of the loan made by Comerica.  Compl. ¶¶ 9-10, Exs. A, B.  Truckload issued common stock options to the McDonalds as consideration for their guaranties.[2]  CC ¶ 17.  Around the same time, at least two other agreements were executed.  CC ¶ 14.  Comerica and Truckload signed a Forbearance Agreement,

---

[1] The McDonalds do not specify who participated in the actual financing negotiations. The McDonalds' allegation that "[t]he parties began negotiating" is unclear as to whether "parties" included only the McDonalds and Austin Ventures, or whether it included Comerica as well.  CC ¶¶ 11-12. The McDonalds also allege that Comerica was "involved" in the completion of the "series of agreements."  CC ¶ 13.

[2] Although not clear from the McDonalds' pleadings, Comerica's motion suggests that the guaranties were given in exchange for Comerica's forbearance.  *See* Mot. at 1.

whereby Comerica would forbear from exercising its default remedies under the original debt agreement until December 2004, such as its right to foreclose on Truckload's collateral. Declaration of William Stuart Bell in Supp. of Comerica's Mot. to Dismiss ("Bell Decl."), Ex. 1.[3]  Under the agreement, if Truckload raised a certain amount of capital by December 2004, Comerica would extend its forbearance until April 2005. Bell Decl., Ex. 1 at 2.

In addition, a Refinancing Agreement was executed among Austin Ventures, Alan McDonald, and Truckload. CC ¶ 14; McDonalds' Request for Judicial Notice ("RJN"), Ex. A. Pursuant to the Refinancing Agreement, Austin Ventures agreed that Truckload would sell at least $2,000,000 of a newly designated Series C preferred stock to "accredited investors," which would allegedly be used to pay Truckload's debt to Comerica. *Id.*, Ex. B at 1-2; CC ¶ 23; Opp. at 9. However, the McDonalds allege that Comerica "never . . . inten[ded] to continue the operations of Truckload or allow it to take on additional investors." CC ¶ 18. Instead, Comerica and Austin Ventures allegedly "held secret meetings" and "conspired to defraud and induce [the McDonalds] to execute the [personal] Guaranties with a plan to shut down Truckload." CC ¶ 21.

In March 2005, Michael McDonald allegedly recruited a potential institutional investor to purchase the Series C stock and recapitalize the company.[4] CC ¶ 22. The McDonalds allege that Comerica and Austin Ventures negotiated in bad faith with the investor and thereby "prevent[ed] a successful . . . round" of refinancing. CC ¶¶ 22, 23. Comerica then exercised its foreclosure rights on Truckload's loan. CC ¶ 24.

On June 12, 2006, Comerica filed a Complaint for breach of guaranties against the McDonalds. On August 22, 2006, the McDonalds filed this counterclaim against Comerica. The McDonalds generally claim that Comerica fraudulently induced the McDonalds to personally

---

[3] Comerica requests judicial notice of the Forbearance Agreement. The McDonalds request judicial notice of the Refinancing Agreement. Neither party opposes the other's request. The McDonalds' counterclaim refers to both the Forbearance Agreement and the Refinancing Agreement, and the parties' pleadings rely upon these agreements. CC ¶ 3. Accordingly, the court takes judicial notice of both agreements pursuant to Federal Rule of Evidence 201. *See also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998); *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (considering documents referenced in the complaint relied on by plaintiff's allegations).

[4] It is unclear whether the Forbearance Agreement had been extended beyond December 2004.

guarantee $2 million of Truckload's debt by falsely leading them to believe that Comerica would allow Truckload to "take on additional investors" while secretly intending to shut Truckload down. CC ¶¶ 12, 23. Comerica filed the present motion to dismiss the McDonalds' counterclaim.

## II.  ANALYSIS

Comerica seeks to dismiss the counterclaim for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Comerica contends that the McDonalds have not alleged facts sufficient to state a claim of fraud with sufficient specificity as required by Fed. R. Civ. P. 9(b) and that the McDonalds' theory of fraud is barred by the parol evidence rule.

### A.     Legal Standard

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Dismissal can be based on the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The issue is not whether the non-moving party will ultimately prevail but whether it is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994). However, the court is not required to accept conclusory legal allegations "cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Rule 9(b) of the Federal Rules of Civil Procedure further requires that "when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations and citations omitted). The allegations "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id*. However, "the requirement of specificity is relaxed when the allegations indicate that 'the defendant must necessarily possess full information concerning the facts of the controversy'" or "when the facts lie more in the knowledge of

the opposite party." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. Rptr. 2d 861, 863 (1991) (quoting *Turner v. Milstein*, 230 P.2d 25 (1951)).

### B. Fraud Claim

Comerica argues that the counterclaim should be dismissed because (1) the McDonalds do not allege any false representation of an existing fact, (2) the McDonalds' theory of fraud is barred by the parol evidence rule and the integration clause of the guaranty agreements, and (3) the McDonalds do not plead the details of the fraud with the required particularity.

Under California law, a claim for fraud requires the following elements: (1) misrepresentation such as concealment[5] or nondisclosure; (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 909 P.2d 981, 984-85 (1996). Promissory fraud is a subspecies of an action for fraud based on a promise made without intention to perform. *Id.*; *see also Tarmann*, 2 Cal. Rptr. 2d at 863-64 (1991) (finding that "action based on a false promise is simply a type of intentional misrepresentation, i.e., actual fraud").

The McDonalds do not adequately allege a misrepresentation. In an action for promissory fraud, the element of misrepresentation may be satisfied by alleging a promise. *Tarmann*, 2 Cal. Rptr. 2d at 863; *see also* 5 Witkin Cal. Proc. § 677 (4th ed. 1997) (stating that in pleading a promissory fraud claim, "[t]he allegation of a promise (which implies a representation of intention to perform) is the equivalent of the ordinary allegation of a representation of fact" ). Here, the McDonalds generally allege that Comerica "led [the McDonalds] to believe [retail accredited] investors would be acceptable." CC ¶ 12. However, the McDonalds do not allege either how Comerica misled them or what statements Comerica made during the refinancing negotiations, if any, that led the McDonalds to their alleged beliefs.

In addition, the requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written. *Tarmann,* 2 Cal. Rptr. 2d at 863, citing *Sanders v. Ford Motor Co.*, 158 Cal. Rptr. 656 (1979). Here,

---

[5] A fraudulent concealment claim requires an allegation that defendant "concealed or suppressed the fact with an intent to defraud." *Williamson v. Gen. Dynamics Corp*., 208 F.3d 1144, 1156 n.3 (9th Cir. 2000).

the McDonalds do not allege any names of the persons who made the allegedly misleading promises as required for fraud actions against a corporation. The McDonalds' general allegations of Comerica's concealment by harboring "secret[] plan[s]" and holding "secret meetings and communications" do not suffice for a fraudulent concealment claim. CC ¶¶ 11, 21.

The McDonalds argue that because the details of Comerica's concealment are "information exclusively within Comerica's and Austin Venture's knowledge and control," a relaxed pleading standard applies pursuant to *Wood v. Apadoca*, 375 F. Supp. 2d 942 (N.D. Cal. 2005). Opp. at 12. The court in *Wood* held that Rule 9(b)'s requirement to plead with particularity "may be relaxed as to matters within the opposing party's knowledge." *Wood*, 375 F. Supp. 2d at 949 (finding plaintiff's pleading sufficient under 9(b) even without identification of place where alleged fraud occurred, since plaintiff pled that such knowledge was within defendants' knowledge) (quoting *Moore v. Kavport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)). However, the McDonalds do not identify the specific content and source(s) of Comerica's alleged obligation. The McDonalds also do not allege that details regarding such obligation were only within Comerica's knowledge. Comerica was not a party to the Refinancing Agreement, and the McDonalds have not alleged how Comerica was obligated by it. Thus, the McDonalds fail to allege with sufficient specificity a misrepresentation by Comerica.

The court finds the McDonalds have not sufficiently alleged at least one of the required elements to state a claim for fraud.[6] Even accepting the McDonalds' allegations as true, they are insufficient to state the existence of a fraud claim. Therefore, the court dismisses the McDonalds' counterclaim.

---

[6] Comerica also argues that because the guaranties and the Forbearance Agreement each contain an integration clause, the McDonalds may not allege fraud based on extra-contractual representations. Mot. at 6-9. The court notes that the mere existence of integration clause does not preclude a plaintiff from proving fraud through extra-contractual representations. *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp.*, 38 Cal. Rptr. 2d 783 (1995). Nevertheless, the parol evidence rule may bar a false promise claim if the claim is based on an oral promise which contradicts with a written contract between the parties. 5 Witkin Cal. Proc. § 677 (4th ed. 1997) ("if the complaint shows a false oral promise that is ineffective under the parol evidence rule because it contradicts a written agreement, it fails to state a cause of action in California").

### C. Leave to Amend

Leave to amend is to be freely granted when justice so requires. *See* Fed. R. Civ. P. 15(a). "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). A motion to dismiss is not a "responsive pleading" within the meaning of Fed. R. Civ. P. 15(a). *Breier v. N. Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 789-90 (9th Cir. 1963). No responsive pleading has been served in response to this counterclaim. The amended complaint, in particular, should set forth specific facts showing how Comerica is responsible for representations in the Refinancing Agreement to which it was not a party.

### III. ORDER

For the foregoing reasons, the court grants Comerica's motion to dismiss the McDonalds' fraud counterclaim. The McDonalds have 20 days from the date of this order to amend their claim.

DATED:      11/17/06

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been sent to:**

**Counsel for Defendants Michael and Alan McDonald:**

| | |
|---|---|
| Michael Glanzberg | mgg@kelher.com |
| John Ferry | jferry@kelher.com |
| Don Colleluori | don.colleluori@figdav.com |
| Andrew Speicher | drew.speicher@figdav.com |

**Counsel for Plaintiff Comerica:**

| | |
|---|---|
| Geraldine Freeman | gfreeman@sheppardmullin.com |
| David DeGroot | ddegroot@sheppardmullin.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

Dated:   11/20/06

SPT
Chambers of Judge Whyte