1

2

3                                                                    **E-FILED on**    3/6/07

4

5

6

7

8                         IN THE UNITED STATES DISTRICT COURT

9                        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                                  SAN JOSE DIVISION

11

12   COMERICA BANK,                         | No. C-06-03735  RMW

13                  Plaintiff,              | ORDER DENYING COMERICA'S MOTION
                                            | TO DISMISS COUNTERCLAIM FOR
14          v.                              | FRAUD

15   MICHAEL L. McDONALD and ALAN P.        | **[Re: Docket No. 34]**
     McDONALD,
16
                    Defendants.
17

18   MICHAEL L. McDONALD and ALAN P.
     McDONALD,
19
                    Counter-claimants,
20
            v.
21
     COMERICA BANK,
22
                    Counter-defendant.
23

24

25          Plaintiff Comerica Bank filed a complaint for breach of guaranties against defendants

26   Michael and Alan McDonald ("the McDonalds") on June 12, 2006.  The McDonalds filed a

27   counterclaim ("Original CC") generally claiming that Comerica fraudulently induced the McDonalds

28   to personally guarantee $2 million of debt by falsely leading them to believe that Comerica would

     permit their now-defunct start-up company, Truckload, to take on additional investors while secretly

1    intending to shut Truckload down.  Comerica moved to dismiss the McDonalds' original

2    counterclaim for failure to state a claim.  The court granted Comerica's prior motion on November

3    17, 2006, giving defendants leave to amend ("11/17/06 Order").  The McDonalds amended their

4    fraud counterclaim on December 14, 2006 ("1st Am. CC").  Comerica moves for a second time to

5    dismiss the McDonalds' fraud counterclaim for failure to state a claim.  For the reasons set forth

6    below, the court denies Comerica's motion to dismiss the McDonalds' amended fraud counterclaim.

7                                    **I. BACKGROUND**[1]

8           The McDonalds partially own and operate Truckload, a now-defunct start-up company

9    providing construction supply services.  1st Am. CC ¶¶ 6, 8.  Austin Ventures, which is not a party to

10   this action, is a venture capital firm that invested $9.5 million in Truckload as the controlling

11   shareholder in September 2003.  1st Am. CC ¶ 7.  At the time, because Truckload allegedly had no

12   cash, no credit capacity and no history of profitable operations, it could not qualify for traditional

13   bank loans.  1st Am. CC ¶ 8.  In October 2003, Comerica's Bank Technology and Life Science

14   Division in Palo Alto, California provided a high-risk loan of $5 million to Truckload through Austin

15   Ventures.  *Id*.  The McDonalds allege that Austin Ventures "almost exclusively" uses this Comerica

16   division as a provider of high-risk financing.  *Id*.  As part of the "loan 'package,'" Comerica acquired

17   shares and became an owner of Truckload.  *Id*.

18          As Truckload began to run very low on cash in the summer of 2004, Truckload and Austin

19   Ventures negotiated, from July 2004 through October 2004, another round of financing.[2]  1st Am. CC

20   ¶¶ 10, 12.  As part of these negotiations, the McDonalds allege that Comerica and Austin Ventures

21   requested that the McDonalds begin looking for additional individual investors to contribute $2

22   million in equity.  According to the counterclaim, Comerica "participated in the negotiation of, and

23   specifically approved" an investment term sheet prepared by the McDonalds to solicit individual

24

25          [1]      The background facts are taken from this court's 11/17/06 Order to the extent the
     First Amended Counterclaim recites facts similar to the defendants' Original Counterclaim.
26

27          [2]      The McDonalds do not specify who participated in the actual financing negotiations.
     The McDonalds' allegation that "[t]he parties began negotiating" is unclear as to whether "parties"
28   included only the McDonalds and Austin Ventures, or whether it included Comerica as well.  CC ¶¶
     11-12.  The McDonalds also allege that Comerica was "involved" in the completion of the "series of
     agreements."  CC ¶ 13.

investors similar to those who had invested in Truckload from 2001 to 2003.  1st Am. CC ¶ 12.  The McDonalds allege that Austin Ventures and Comerica, notwithstanding their participation in the creation of the term sheet, "had already secretly agreed that [they] would not accept individual 'retail' investors and were instead already planning to shut down Truckload."  *Id.*

On October 27, 2004, the parties executed five agreements that the McDonalds allege are part of a "global refinancing transaction" between the parties which was allegedly a "scheme to 'bait and switch' and defraud" the McDonalds.  *Id.*  The documents are a Waiver and Release Agreement; a Refinancing Agreement between, *inter alia*, Austin Ventures, Alan McDonald and Truckload; a Forbearance and Amendment Agreement between Truckload and Comerica which provided for $1.1 million in bridge loans to Truckload; and two guaranty documents with Comerica under which each McDonald made a personal guaranty of up to $1 million of the loan made by Comerica.  1st Am. CC ¶¶ 14-21, Decl. William Bell Supp. Comerica's Mot. to Dismiss ("Bell Decl."), Exs. 1-3.[3]

Under the Refinancing Agreement, Austin Ventures agreed that Truckload would sell at least $2 million of a newly designated Series C preferred stock to "accredited investors," which would allegedly be used to pay Truckload's debt to Comerica.  Refinancing Agreement at 1-2; 1st Am. CC ¶¶ 21, 26.

Under the Forbearance Agreement, allegedly executed in exchange for the McDonalds executing the guaranty agreements, Comerica agreed to forbear until December 31, 2004 from exercising its default remedies that had become available, such as its right to foreclose on Truckload's collateral under the original debt agreement. 1st Am. CC ¶ 13.  Additionally, Comerica agreed that if Truckload raised $3,475,000 in cash equity contributions by December 31, 2004, Comerica would extend its forbearance until April 30, 2005.  *Id.* ¶ 13; Forbearance Agreement, Bell Decl., Ex. 3 at 2.

---

[3]     Comerica requests judicial notice of the Forbearance Agreement and the two Guaranty documents.  The McDonalds previously requested judicial notice of the Refinancing Agreement.  The McDonalds' counterclaim refers to both the Forbearance Agreement and the Refinancing Agreement, and the parties' pleadings rely upon these agreements.  1st Am. CC ¶¶ 14-19.  Accordingly, the court takes judicial notice of both agreements pursuant to Federal Rule of Evidence 201.  *See also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998); *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (considering documents referenced in the complaint relied on by plaintiff's allegations).

1    Alan McDonald allegedly successfully recruited potential investors but was told by Austin

2  Ventures that the individual "retail" investors who had been identified were not satisfactory to Austin

3  Ventures and Comerica.  1st Am. CC ¶ 27.  The McDonalds allege that both Austin Ventures and

4  Comerica never intended to continue the operations of Truckload or allow it to take on additional

5  investors.  *Id*. ¶ 25.  In March 2005, Michael McDonald allegedly recruited a potential institutional

6  investor, Vision Equity, to purchase the Series C stock and recapitalize the company.  *Id.* ¶ 29.  The

7  McDonalds allege that Comerica and Austin Ventures negotiated in bad faith with the investor,

8  rejected the terms and "tortiously interfered with the Refinancing Agreement and Truckload's

9  continued operations."  *Id.*  Thereafter, Comerica took over management of Truckload, shut it down,

10  and sold off its assets at "fire sale" prices.  *Id.* ¶ 31.

## II.  ANALYSIS

12    Comerica again seeks to dismiss the counterclaim for failure to state a claim pursuant to

13  Federal Rules of Civil Procedure 12(b)(6) and 9(b).  As in its previous motion to dismiss, Comerica

14  contends that the McDonalds' amended counterclaim should be dismissed because (1) the McDonalds

15  do not allege any false representation of an existing fact, (2) the McDonalds' theory of fraud is barred

16  by the parol evidence rule and the integration clause of the guaranty agreements, and (3) the

17  McDonalds do not plead the details of the fraud with the required particularity.

18    Based on the amendment to the counterclaim, it would appear that the McDonalds'

19  amendments to the counterclaim seek to (1) allege more clearly that the five documents executed in

20  October 2004 make up a global refinancing transaction and must be read together and (2) establish

21  that Comerica and Austin Ventures conspired to defraud the McDonalds into assuming part of the

22  financial burden for Truckload before shutting the company down.

### A.    Legal Standard

24    A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.

25  Dismissal can be based on the "lack of a cognizable legal theory" or "the absence of sufficient facts

26  alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th

27  Cir. 1988).  The issue is not whether the non-moving party will ultimately prevail but whether it is

28  entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246,

249 (9th Cir. 1997).  When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994).  However, the court is not required to accept conclusory legal allegations "cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Rule 9(b) of the Federal Rules of Civil Procedure further requires that "when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations and citations omitted).  The allegations "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Id.*

**B.    Fraud Claim**

Under California law, a claim for fraud requires the following elements: (1) misrepresentation such as concealment[4] or nondisclosure; (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damage.  *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).  Promissory fraud is a subspecies of an action for fraud based on a promise made without intention to perform.  *Id.*

The court dismissed the original fraud counterclaim because the McDonalds failed to adequately allege a misrepresentation under a promissory fraud theory.  11/17/06 Order at 5.  The McDonalds previously alleged that Comerica "led [the McDonalds] to believe [retail accredited] investors would be acceptable," Original CC ¶ 12, but did not allege either how Comerica misled them or what statements Comerica made during the refinancing negotiations, if any, that led the McDonalds to their alleged beliefs.  11/17/06 Order at 5.  The court also found that the original fraud counterclaim contained only general allegations of Comerica's concealment by harboring "secret[] plan[s]" and holding "secret meetings and communications," which did not suffice for a fraudulent

---

[4]    A fraudulent concealment claim requires an allegation that defendant "concealed or suppressed the fact with an intent to defraud."  *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1156 n.3 (9th Cir. 2000).

1   concealment claim. 11/17/06 Order at 5-6 (citing Original CC ¶¶ 11, 21).

2       In their amended counterclaim, the McDonalds now state that Comerica employees Michael

3   Park and Tim Klitch, "participated in the negotiation of and specifically approved" the term sheet and

4   the proposed course of action to solicit individual investors in the Series C-round financing that were

5   similar to those who invested in Truckload from 2001 to 2003.  1st Am. CC ¶ 12.  The McDonalds

6   also allege that, unbeknownst to them, Austin Ventures and Comerica "were simultaneously meeting

7   behind [their] back and had already secretly agreed" that Austin Ventures and Comerica would not

8   accept individual "retail" investors, planning instead to shut down Truckload.  *Id.*  Alan McDonald

9   allegedly successfully recruited potential investors, only to be told by Austin Ventures that the

10  individual "retail" investors that had been identified were not satisfactory to Austin Ventures and

11  Comerica.  *Id.* ¶ 27.  The McDonalds allege that both Austin Ventures and Comerica never intended

12  to continue the operations of Truckload or allow it to take on additional investors.  *Id.* ¶ 25.  They

13  allege that Comerica knew of Austin Ventures's intent and that Comerica's agreement to forbear from

14  exercising its default options against Truckload was designed to assist Austin Ventures in defrauding

15  the McDonalds.

16      The McDonalds' allegation of misrepresentation in the amended counterclaim is that

17  Comerica concealed its intent to disapprove of potential investors and its agreement with Austin

18  Ventures.   The allegation as amended sets forth with greater specificity, to the extent known, the

19  who (Park and Klitch), the what (approval of the term sheet and the plan of action to solicit

20  individual investors), the when (during the July 2004 through October 2004 negotiations), where (not

21  specified), and how (approval of the term sheet and the plan of action to solicit individual investors)

22  of the alleged fraud.  As amended, this allegation is sufficient to survive Comerica's motion to

23  dismiss.

24      **C.      Parol Evidence**

25      Comerica argues that because the guaranties and the Forbearance Agreement each contain an

26  integration clause, the parol evidence rule precludes the McDonalds from alleging fraud based on

27

28

ORDER DENYING MOTION TO DISMISS COUNTERCLAIM FOR FRAUD—C-06-03735 RMW
MAG                                                        6

1  extra-contractual representations.[5]  "The parol evidence rule [] establishes that the terms contained in

2  an integrated written agreement may not be contradicted by prior or contemporaneous agreements."

3  *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 344 (2004).  This rule "bars consideration of

4  extrinsic evidence of prior or contemporaneous negotiations or agreements at variance with the

5  substantive agreement" because such evidence cannot create or alter the obligations under the written

6  instrument.  *Id.* (quoting *Tahoe Nat'l Bank v. Phillips*, 4 Cal. 3d 11, 23 (1971)).  The application of

7  the parol evidence rule "establishes that an integrated written agreement supersedes any prior or

8  contemporaneous promise at variance with the terms of that agreement."  *Id.* at 346 (citing *BMW of

9  N. Am., Inc. v. New Motor Vehicle Bd.*, 162 Cal. App. 3d 980, 990 (1984)).

10         The parol evidence rule may bar a false promise claim if the claim is based on an oral promise

11  which contradicts with a written contract between the parties.  5 Witkin Cal. Proc. § 677 (4th ed.

12  1997) ("if the complaint shows a false oral promise that is ineffective under the parol evidence rule

13  because it contradicts a written agreement, it fails to state a cause of action in California").  In this

14  regard, Comerica is correct that to the extent the McDonalds seek to establish fraud, they may not

15  rely on any purported inconsistent prior or contemporaneous promise by Comerica to extend the time

16  permitted for them to obtain qualified investors under the Forbearance Agreement.  Thus, for

17  example, the McDonalds' allegation that Vision Equity, a potential investor in Truckload, was

18  interested in purchasing series C stock in March 2005 cannot be the basis for a promissory fraud

19  because the counterclaim clearly alleges that the McDonalds failed to secure this potential investor

20  prior to December 31, 2004.  1st Am. CC ¶ 29.  Thus, to the extent the McDonald's false promise

21  claim is based on a prior or contemporaneous oral promise by Comerica to extend the date to secure

22  $3,475,000, such claim relies upon evidence that is barred by the parol evidence rule and is thus

23  rejected.  *See Casa Herrera*, 32 Cal. 4th at 346-47 ("[C]ourts have consistently rejected promissory

24  fraud claims premised on prior or contemporaneous statements at variance with the terms of a written

25  integrated agreement.").

26         Parol evidence may, however, be used for purposes of establishing fraud if such evidence

27

28         [5]      As the court noted previously, the mere existence of integration clause does not
preclude a plaintiff from proving fraud through extra-contractual representations.  *Ron Greenspan
Volkswagen, Inc. v. Ford Motor Land Dev. Corp.*, 38 Cal. Rptr. 2d 783 (1995).

1   does not seek to vary or contradict a promise set forth in the writing.  *Cf. Bank of America Nat. Trust*

2   *& Savings Ass'n v. Pendergrass*, 4 Cal.2d 258, 263 (1935) (parol evidence of fraud permitted to

3   establish the invalidity of the instrument if it "establish[es] some independent fact or representation,

4   some fraud in the procurement of the instrument or some breach of confidence concerning its use,

5   and not a promise directly at variance with the promise of the writing").  Here, the McDonalds seek

6   to establish that Comerica engaged in fraudulent conduct in concert with Austin Ventures by acting

7   to disapprove the potential individual "retail" investors that Truckload identified prior to December

8   2004.[6]  The agreements that are alleged to be part of the global financing transaction do not appear

9   include terms or criteria for approving potential investors, therefore any alleged promise or

10  representation regarding approval of investors cannot be at variance with the agreement.

11  Accordingly, the parol evidence rule does not bar the McDonalds' claim.

### III. ORDER

13          For the foregoing reasons, the court denies Comerica's motion to dismiss the McDonalds'

14  fraud counterclaim.

16  DATED:  _____3/5/07_____          _Ronald M Whyte_____

17                                                    RONALD M. WHYTE
                                                      United States District Judge

---

[6]          Contrary to Comerica's assertion that the McDonalds have made "no allegation that
Comerica rejected any investors or the terms of any proposed equity contribution at any time before
December 31, 2004," Opp. at 10, the McDonalds' amended counterclaim alleges that they were told
by Austin Ventures that the retail investors were unacceptable to both Austin Ventures and
Comerica, 1st Am. CC ¶ 27.

1  **Notice of this document has been sent to:**

2  **Counsel for Defendants Michael and Alan McDonald:**

3  Michael Glanzberg                 mgg@kelher.com
   John Ferry                        jferry@kelher.com
4  Don Colleluori                don.colleluori@figdav.com
   Andrew Speicher              drew.speicher@figdav.com

5  **Counsel for Plaintiff Comerica:**

6

7  Geraldine Freeman           gfreeman@sheppardmullin.com
   David DeGroot               ddegroot@sheppardmullin.com

8

9

10

11  Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

12

13  Dated:        3/6/07                           /s/ MAG
14                                                 Chambers of Judge Whyte

15

16

17

18

19

20

21

22

23

24

25

26

27

28